810 P.2d 191

STATE of Arizona,
Appellee/Cross–Appellant,

v.

Kriss Landon BARGER,
Appellant/Cross–Appellee.

No. 1 CA–CR 89–1524.

Court of Appeals of Arizona,
Division 1, Department D.

Oct. 25, 1990.

Review Denied May 23, 1991.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Asst. Atty. Gen., Chief Counsel, and Paul J. McMurdie, Asst. Atty. Gen., Crim. Div., Phoenix, for appellee/cross-appellant.

Heron, Burchette, Ruckert & Rothwell by James R. Hart, II, Mesa, for appellant/cross-appellee.

## OPINION

TAYLOR, Judge.

Defendant was convicted of one count of aggravated assault, a dangerous felony, and acquitted of one count of aggravated assault. Because he committed the offense while on parole, the trial court sentenced defendant to life imprisonment pursuant to A.R.S. § 13–604.02(A). He filed a direct appeal; the state filed a cross-appeal, and this case was transferred to this court by order of the supreme court. We have jurisdiction pursuant to A.R.S. § 12–120.21.

On appeal, defendant argues that:

(1) the trial court erroneously excluded defendant's statements to the police;

(2) the jury was incorrectly instructed on self-defense;

(3) the trial court should have granted a motion for judgment of acquittal; and

(4) the sentence imposed is unconstitutional.

On cross-appeal, the state argues that the trial court should not have instructed on self-defense because defendant provoked the incident. For the following reasons, the conviction and sentence imposed are affirmed. We therefore need not reach the issue presented by the state's cross-ap-

peal. *See State v. Wright,* 161 Ariz. 394, 778 P.2d 1290 (App.1989).

## FACTS

Defendant rented a room at the home of Vicky Renee Pitts, the victim of the offense alleged in Count I of the information. About a month afterwards, Pitts told defendant to move out because he was not paying his bills and because he had friends at the house "partying all the time." At trial, Pitts testified that although defendant moved out, he returned repeatedly and harassed her and her children. Sometime in July, defendant moved back into the home without the victim's permission. She requested numerous times that he leave, and after several days, defendant did move. However, the animosity between the two heightened to violence when defendant again returned to the home.

Pitts told defendant to leave. She testified, "I told him I was getting really tired of it. I was getting ready to blow up. He wouldn't leave us alone.... I figured after he had left in May, that I wouldn't see him any more, and our problems would be over." A physical altercation ensued, and the victim's friend, Holland Townley, had to restrain her. He then told defendant to leave. Pitts again told defendant to leave and never return.

Defendant left but returned the following Sunday with another individual on a motorcycle. Pitts stepped out of the front door and told defendant to leave or she would call the police. Defendant told her he could "go where he wants ... do what he wants" whenever he wanted to, and then told her to shut up. Pitts knew defendant hated water so she bent down and grabbed a hose to spray him. At that point, defendant struck the victim in the face with his hand, nearly knocking her down. Townley saw defendant strike the victim and grabbed "the closest thing [he] could find"—a machete. He stepped out of the front door and told defendant to leave. Defendant then obtained a pistol from his companion and brandished it. The moment Townley saw the gun, he jumped back into the house. Defendant threatened to kill Pitts. Pitts testified that she was afraid defendant would kill her. She then went back into the house and told someone to call the police. A friend was able to persuade defendant to leave before the police arrived. Defendant was subsequently apprehended and charged with two counts of aggravated assault.

Although he did not testify at trial, defendant advanced a self-defense theory. He attempted to elicit testimony from one of the officers to establish that shortly after he was arrested, he told police he believed that when the victim bent over, the gesture was threatening, and that Townley's exhibition of the machete was threatening. The state's objection to these statements was partly sustained. The jury found defendant guilty of Count I, aggravated assault, a dangerous offense, but not guilty of Count II, aggravated assault against Townley. The state presented evidence that defendant committed the crime while on parole and the trial court imposed a term of life imprisonment as mandated by A.R.S. § 13–604.02(A).

## DID THE TRIAL COURT ERRONEOUSLY EXCLUDE STATEMENTS MADE BY DEFENDANT TO POLICE?

When defendant called the arresting officer to testify, the state moved to preclude the admission of defendant's statements as self-serving hearsay. Defendant argued that, because he had elected not to testify, he was "unavailable" and he had no other way to get the statements into evidence. Furthermore, he argued that he should be entitled to elicit impeachment testimony from the officer to establish that Townley exhibited a machete. There was evidence which indicated that when the incident was first reported to police, Townley did not mention the machete. After hearing argument, the trial court ruled that defendant could elicit any testimony which would impeach the testimony of either Pitts or Townley, including the fact that Townley exhibited a machete. However, the court ruled that defendant's self-serving statements—that he felt threatened by the gestures of the victim and Townley—were in-

admissible hearsay pursuant to *State v. Smith,* 138 Ariz. 79, 673 P.2d 17, *cert. denied,* 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1983).

On appeal, defendant claims that his statements should have been admitted as either (1) non-hearsay or state of mind pursuant to Rule 802, Arizona Rules of Evidence; (2) reliable and trustworthy hearsay pursuant to Rules 803(24) and 804(b)(5); or (3) statements against interest pursuant to Rule 804(b)(3). The state argues that defendant's statements did not fall within any hearsay exception and were therefore properly excluded.

### Standard of Review

A trial court's ruling on an evidentiary matter will not be disturbed on appeal absent a showing of a clear abuse of discretion. *State v. Oliver,* 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988); *State v. Chapple,* 135 Ariz. 281, 290, 660 P.2d 1208, 1217 (1983). In this case, defendant has failed to show a clear abuse of discretion.

### The Hearsay Analysis

We begin by rejecting defendant's claim that the statements were not hearsay. The statements offered by defendant were direct assertions of his belief or "feeling" that he felt threatened and were offered to prove the matter asserted. Therefore, the statements were hearsay. Defendant fails to draw the distinction between an assertion of some other fact from which it is possible circumstantially to infer a relevant state of mind—nonhearsay—and a direct assertion of a then existing state of mind—hearsay. M. Udall and J. Livermore, *Arizona Law of Evidence,* § 128 at 274 (1982). For example, in *State v. Ramirez,* 116 Ariz. 259, 266, 569 P.2d 201, 208 (1977), the defendant's statement made just before his wife's murder, "that some man was fooling around with his wife and that if he found out who it was, he would kill him," was admissible because it was not offered to prove the truth of the matter asserted, but rather to show the defendant's state of mind and thus establish his motive for killing his wife. In this case,

defendant's statements to the police, made the day following the incident, were a direct assertion that he had felt threatened by the victim's gesture and Townley's exhibition of the machete.

### The State of Mind Exception

The state-of-mind exception does not include a statement of memory or belief to prove a fact remembered or believed. Rule 803(3); *State v. Christensen,* 129 Ariz. 32, 36, 628 P.2d 580, 584 (1981). *See also State v. Charo,* 156 Ariz. 561, 754 P.2d 288 (1988) (testimony offered to prove truth of victim's belief she "feared" defendant not admissible under state-of-mind exception). Here, defendant's statements were made to police the day after the incident and concerned his past mental condition. Thus, they were not admissible to prove then-existing state of mind.

### The Residual Hearsay Exception

In *Smith,* the court held that it was not error to exclude defendant's exculpatory hearsay statement made to a police officer. In so ruling, the court noted that such self-serving statements are "highly suspect" and that, absent circumstantial guarantees of trustworthiness, a trial court does not err in excluding such statements. 138 Ariz. at 84, 673 P.2d at 22; *see Starkins v. Bateman,* 150 Ariz. 537, 545, 724 P.2d 1206, 1214 (1986) (plaintiff's statement to witness that he had denied stealing gasoline inadmissible under residual hearsay exception because statement highly suspect); *State v. Dalglish,* 131 Ariz. 133, 138, 639 P.2d 323, 328 (1982) (where defendant claimed self-defense, his statement to another about how he had received black eye inadmissible hearsay); *see also, State v. Flores,* 160 Ariz. 235, 772 P.2d 589 (App. 1989); *State v. Spratt,* 126 Ariz. 184, 613 P.2d 848 (App.1980).

In this matter, defendant's statements were clearly self-serving hearsay, and the trial court did not err in excluding them pursuant to *Smith.*

*The Statement Against Interest Exception*

■ An "exculpatory statement" is a statement which tends to justify, excuse, or exonerate the defendant from alleged fault or guilt. *State v. Cobb*, 2 Ariz.App. 71, 73, 406 P.2d 421, 423 (1965). Here, defendant's statements were exculpatory because they were uttered in justification of his conduct. To be admissible under the statement against interest exception, the statement must be "so far contrary to the declarant's pecuniary or proprietary interest or so far tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true." Rule 804(b)(3). We find defendant's statements to the police were not against his interest.

Even if some of defendant's statements were arguably against his interest,[1] defendant did not argue in the trial court that the statements fell within this exception. Therefore, the argument is waived on appeal. Rule 103; *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982).

■ Finally, even if the statements were admissible, their exclusion was harmless error. As noted, the jury acquitted defendant on the aggravated assault charge against Townley. Therefore, even if the statement was excluded erroneously, the point is moot. The jury could have found that defendant was threatened by the exhibition of the machete and was therefore justified in exhibiting the gun. As to Pitts, the jury heard testimony that she bent over to pick up a hose, intending to spray defendant with water. The jury was instructed that defendant's use of deadly force was justified only if "a reasonable person" in defendant's situation would have believed that such force was necessary. It is reasonable to infer that the jury concluded that defendant's use of deadly force was not a reasonable response to the victim's bending over to grab a hose. Exclusion of defendant's statement to police the next

day, that he subjectively believed he was threatened by this gesture, was, if error, clearly harmless because of the objective element of a justification defense.

## WAS THE JURY INCORRECTLY INSTRUCTED ON SELF-DEFENSE?

■ During the settling of jury instructions, defendant moved to withdraw two paragraphs of his proposed self-defense instruction on the grounds that they were "not justified on the facts." The objectionable portions stated:

> Self-defense justifies the use or threat of physical force only while the apparent danger continues. The right to use physical force in self-defense ends when the apparent danger ends.
>
> Actual danger is not necessary to justify the use of physical force in self-defense. It is enough if a reasonable person in defendant's situation would have believed that he was in immediate physical danger.

Defendant argues that the evidence did not support the giving of this instruction, that this instruction misled the jury, and is therefore reversible error.

The state argued that if the trial court was going to instruct on self-defense, those two paragraphs were appropriate. The trial court agreed that they were correct statements of the law and that they should be given. We agree that the evidence supported the giving of the instruction. As argued by the state:

> [PROSECUTOR]: ... the jury could certainly find that when Holland Townley stepped inside the house, the apparent danger ended. But [the victim] testified that the gun was still being waved until someone else came out.

*The Trial Evidence*

Although there was some evidence that after Townley exhibited the machete, both he and Pitts immediately retreated to the

---

1. Defendant argues that his statement included an admission he had a gun, a violation of the conditions of his parole. Therefore, he argues, the statements were against his interest. However, as noted, it was not this statement defendant intended to introduce.

house, there was other evidence that when Townley saw the gun, he immediately jumped back into the house and a short time later, Pitts retreated into the home. Although the evidence was conflicting, the jury could reasonably have concluded that after Townley went back into the residence, the machete ceased to pose a danger and that there was no longer any apparent threat sufficient to support a justification defense. Defendant simply was not entitled to continue to brandish the weapon and to threaten to "blow" the victim's head off.

A party is entitled to a jury instruction on any theory supported by the evidence. *State v. Reid*, 155 Ariz. 399, 401, 747 P.2d 560, 562 (1987); *State v. Dean*, 129 Ariz. 17, 18, 628 P.2d 54, 55 (App.1981). In this matter, there clearly was sufficient evidence to support the instruction given.

## DID THE TRIAL COURT ERRONEOUSLY DENY THE MOTION FOR JUDGMENT OF ACQUITTAL?

Defendant argues that the trial court should have granted his motion for judgment of acquittal. He claims that the evidence was insufficient to support his conviction. He also argues that a verdict of not guilty on one count requires a judgment of acquittal on the other count, because the verdicts are fatally inconsistent. Defendant argues that the evidence "clearly showed that [he] produced the alleged weapon only after being himself assaulted with a deadly weapon and that [he] acted in justifiable self-defense relative to both counts." Therefore, he argues, because the jury's verdict was "completely contradictory and a mistake both of law and fact," the trial court should have granted the judgment of acquittal after the verdict.

### Standard of Review

■ When reviewing the sufficiency of the evidence, an appellate court does not reweigh the evidence to decide if it would reach the same conclusions as the trier of fact. *State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). The trial evidence is viewed in the light most favorable to sustaining the verdict and all reasonable

inferences drawn therefrom are to be resolved against the defendant. *State v. Tison*, 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). If conflicts in the evidence exist, this court must resolve such conflicts in favor of sustaining the verdict. *State v. Girdler*, 138 Ariz. 482, 488, 675 P.2d 1301, 1307 (1983), *cert. denied*, 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 826 (1984). This court will affirm a conviction so long as there is sufficient evidence to enable a rational trier of fact to find guilt beyond a reasonable doubt. *State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984). Substantial evidence is "more than a scintilla and such proof as a reasonable mind would employ to support the conclusion reached." *State v. Goswick*, 142 Ariz. 582, 586, 691 P.2d 673, 677 (1984) (citing *Tison*, 129 Ariz. at 553, 633 P.2d at 362).

### Sufficiency of the Evidence

■ In this case, the state presented evidence sufficient to convict defendant of aggravated assault with a deadly weapon.

The state had the burden to prove that defendant intentionally or knowingly placed another person in reasonable apprehension of imminent physical injury by the use of a deadly weapon. A.R.S. §§ 13–1203(A)(1) and 13–1204(A)(2). At trial, the state produced evidence that defendant said, "I'm going to blow your ... head off" as he pointed the gun in the general direction of the victim. The victim testified that she thought the defendant was going to kill her. This evidence is clearly sufficient to support a finding of guilt.

■ The fact that the jury acquitted defendant of the aggravated assault against Townley does not render its verdict of guilt fatally inconsistent as to Pitts. As noted above, the jury could have concluded that because Townley exhibited a machete, defendant was justified in brandishing a gun, but that he was not justified in threatening to kill Pitts after Townley withdrew into the house with the machete. Townley testified that the victim remained outside and the jury could have rationally conclud-

ed it was at that time that defendant threatened to shoot her. The jury could have concluded that the defendant's threatened use of deadly force against Pitts was not justified. We find that the verdicts in this case were not inconsistent.

### IS THE SENTENCE IMPOSED UNCONSTITUTIONAL?

■ Defendant argues that his twenty-five year "flat" prison term amounts to cruel and unusual punishment. He asserted this argument when this case was previously pending in the supreme court. Defendant urged that court to adopt Justice Feldman's view, expressed in several dissenting opinions, that the mandatory sentencing scheme is in some respects constitutionally infirm.

This court is bound by the decisions issued by the Arizona Supreme Court. *State v. McShine*, 131 Ariz. 485, 487, 642 P.2d 482, 484 (App.1982). In *State v. Garcia*, 141 Ariz. 97, 99–101, 685 P.2d 734, 736–37 (1984), the Arizona Supreme Court upheld the mandatory sentencing statutes. *See also, State v. Cocio*, 147 Ariz. 277, 283, 709 P.2d 1336, 1342 (1985); *State v. Noriega*, 142 Ariz. 474, 487, 690 P.2d 775, 788 (1984).

The *Noriega* court noted that it has found a rational basis for the imposition of a life sentence for criminals who commit dangerous offenses while on release from confinement, and that such a sentencing scheme does not violate defendant's equal protection rights. *Id.*

In light of these Arizona Supreme Court decisions, we are limited in our inquiry to determine only whether the sentence violates the eighth amendment as being excessively harsh. In *Solom v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), it was held that a reviewing court must apply a four-part test to determine if a sentence is unconstitutionally excessive. The reviewing court must consider: 1) the gravity of the offense; 2) the harshness of the penalty; 3) the sentences imposed on other criminal defendants in the same jurisdiction; and 4) the sentences imposed for the commission of the same crimes in other

jurisdictions. *Id.; see Garcia*, 141 Ariz. at 99–100, 685 P.2d at 736–37.

Our supreme court, applying the above test, has consistently refused to find sentences such as the one imposed in this case to be excessive. *Noriega*, 142 Ariz. at 487, 690 P.2d at 788; *State v. Mulalley*, 127 Ariz. 92, 97, 618 P.2d 586, 591 (1980); *State v. Cruz*, 127 Ariz. 33, 35, 617 P.2d 1149, 1151 (1980); *State v. Barnett*, 127 Ariz. 16, 18, 617 P.2d 1132, 1134 (1980); *State v. Fears*, 126 Ariz. 597, 598, 617 P.2d 763, 764 (1980).

As noted in *Noriega*, "imposition of a life sentence under a recidivist statute for an accused most recently convicted of burglary or aggravated assault has survived Eighth Amendment scrutiny in a number of cases." 142 Ariz. at 488, 690 P.2d at 789.

A related constitutional issue surfaced at time of sentencing as the trial judge in this case expressed his frustration at a statutory scheme that gave prosecutors, regardless of experience or motive, the power to shape the sentence by their pleadings while denying to an experienced, impartial trial judge the sentencing discretion needed to impose the punishment the court deemed appropriate. Those frustrations were expressed as follows:

THE COURT: Mr. Barger, I am inclined to agree with your attorney that under all the circumstances of this case, the sentence that I am required to impose by law is wholly inappropriate. Unfortunately, there is not a thing in the world I can do about it other than state on the record that under no circumstances, even if the Court had discretion, would I ever impose a sentence this severe for the actions that you took on that date.

Even though the jury found you guilty of the crime, and it is a dangerous crime, and no doubt that you had no right to have a gun while you were on parole, which you knew. Under any circumstances, even with all of that, there is no chance that if I had any discretion, that I would impose the sentence that I have to impose on you. It is not warranted. It is—under any circumstances, even

though your background is really not the best in the whole world, even though you have done a lot of time in prison for which I probably would have given you a pretty tough sentence, but nowhere near what I have to impose on you by law. I want you to know that. There is nothing I can do about it.

I have seen many cases where the aggravated assaults were far more serious than what you did, and the punishment was far, far less. The prosecutors do this every day. I don't know why this was prosecuted this way, but they have the discretion to prosecute you in the way that they see fit, and this Court doesn't have any discretion in what it has to do.

I have to put that on the record for you. I am sorry. I would not have imposed this sentence if I had any discretion.

The Court having no discretion, no legal cause appearing, pursuant to the provisions of A.R.S. Section 13–604.02, the defendant having been convicted of the dangerous felony while he was on release from confinement, in this case parole, it is ordered that you be sentenced to life imprisonment, and that you will not be eligible for suspension or commutation of sentence, probation, pardon, parole, work furlough, or release from confinement on any other basis, except as specifically authorized by section 31–233, subsection A and B, until you have served not less than 25 years.

Because the issues suggested by this statement were not raised in the briefs, we are not today called upon to determine whether the judicial branch of state government has been impermissibly limited in fulfilling its role in the criminal justice system, nor do we explore the vertical and horizontal separation of powers questions that might otherwise be raised. Likewise, we do not today examine for constitutional defect the threat of malfeasance of office contained in A.R.S. § 13–604.[2] Suffice it to say that today we express our concern that a junior officer in the executive branch of county government (deputy county attorney) is given great discretion and power to affect sentencing in a state court while denying to the state judicial officer who presides over that court any discretion in what has traditionally and inherently been a function of the court.

We find no reversible error in the trial proceedings and find further that the trial court imposed the sentence mandated by statute. Because the supreme court has considered and rejected similar challenges to the mandatory sentencing statutes, the conviction and sentence imposed are affirmed.

BROOKS, P.J., and FIDEL, J., concur.

---

2.  A.R.S. § 13–604(L): "Intentional failure by the court to impose the mandatory sentences or probation conditions provided in this title shall be deemed to be malfeasance."