854 P.2d 1175

**STATE of Arizona, Respondent,**

v.

**James Leo PAC, Petitioner.**

**Nos. 1 CA–CR 91–1226–PR,
1 CA–CR 92–0513–PR.**

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 14, 1993.

Review Denied July 7, 1993.*

Richard M. Romley, Maricopa County Atty. by Jessica Gifford Funkhouser and Arthur Hazelton, Deputy County Attys., Phoenix, for respondent.

James Leo Pac, in pro. per.

Neal W. Bassett, Phoenix, and D. Jesse Smith, Tucson, for petitioner.

* Zlaket, J., of the Supreme Court, voted to grant review.

## OPINION

GRANT, Presiding Judge.

In *State v. Pac*, 165 Ariz. 294, 798 P.2d 1303 (1990), our supreme court held that the plea of James Leo Pac ("defendant") was not made involuntary by *the trial court's failure* to inform him of his statutory ineligibility for early release credits. In these consolidated petitions for review, we are called upon to decide whether defendant Pac was denied effective assistance of counsel by *his trial counsel's failure* to so inform him. We conclude that the defendant was not denied effective assistance of counsel. We also address other issues raised in the petitions, none of which supports relief. Therefore, we grant review of the consolidated petitions for post-conviction relief, but deny relief.

## BACKGROUND

On January 12, 1988, defendant James Leo Pac entered into a plea agreement in which he agreed to plead guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) to one count of attempted sexual conduct with a minor, a class 3 felony and dangerous crime against children in the second degree. In exchange, the state agreed to the dismissal of five other felony counts. On March 16, 1988, the defendant was sentenced to an aggravated term of imprisonment of fifteen years. Defendant's conviction and sentence were affirmed by the supreme court on September 25, 1990. *State v. Pac*, 165 Ariz. at 296, 798 P.2d at 1305.

On August 31, 1990, prior to the supreme court's decision in *Pac*, the defendant filed his first petition for post-conviction relief.[1] In that petition, defendant asserted various claims, including the following: (1) ineffective assistance of both trial and appellate counsel; (2) newly-discovered evidence; (3) use of an invalid prior conviction; (4) voluntariness of plea; and (5) unlawful sentence.

The trial court summarily denied the petition, and defendant timely sought review. The motion for rehearing preserved the following issues: (1) whether the defendant was denied effective assistance of counsel; (2) whether the defendant's plea was voluntary; and (3) whether newly-discovered evidence undermines the factual basis for his plea.

On December 9, 1991, while the first petition was on review, the defendant filed his second petition for post-conviction relief. In this petition, the defendant sought specific performance of the plea agreement and again claimed ineffective assistance of counsel. The second petition was also denied. The second motion for rehearing preserves the following issues: (1) whether the defendant presented a colorable claim that the state had breached the plea agreement; and (2) whether the defendant presented a colorable claim of ineffective assistance of counsel in failing to advise him of a plea offer.

## DISCUSSION

### A. Preclusion

In its responses to both petitions for post-conviction relief, the state pleads preclusion. The trial court summarily denied relief on the first petition and reached the merits of the second. A claim is precluded if the claim has been finally adjudicated on the merits or if the claim could have been raised on appeal or in prior post-conviction proceedings. Ariz.R.Crim.P. 32.2. We hold the following issues to be precluded: voluntariness of defendant's plea as raised in the first petition, the state's alleged violation of the plea agreement as raised in the second petition and counsel's alleged failure to communicate a previous plea offer which was also raised in the second petition. Furthermore, as explained below, we hold that to the extent that the trial court addressed the merits of these claims,

1. At the time the first petition for post-conviction relief was filed, the court of appeals' decision had been published, but review had been granted. *State v. Pac*, 163 Ariz. 58, 785 P.2d 1246 (App.1989). While affirming the defendant's conviction, this court determined that the

trial court had erred in failing to advise codefendant about the statutory ineligibility. *Id.* at 58, 785 P.2d at 1247. This court advised the defendant to seek post-conviction relief to determine if the plea was, in fact, involuntary. *Id.*

it acted within its discretion in denying relief.

▮ Initially, as to the defendant's claim that his plea was involuntary, our supreme court held that the trial court's failure to inform defendant of his ineligibility to earn early release credits did not, as a matter of law, render his plea involuntary. *Pac,* 165 Ariz. at 296, 798 P.2d at 1305. The supreme court's decision forecloses the relief defendant seeks in his post-conviction proceedings. *Id.* The supreme court specifically rejected this court's unwillingness to rule on voluntariness as a matter of law. *See State v. Pac,* 163 Ariz. 58, 59, 785 P.2d 1246, 1247 (App.1989). Thus, the defendant is precluded from relief on this basis.

Similarly, with regard to the two claims preserved for review in the second petition for post-conviction relief, both claims are clearly precluded by the direct appeal and the first petition for post-conviction relief as both could have been raised therein. Furthermore, the record indicates that neither claim has merit.

The defendant first asserts that the state breached the plea agreement. We find no breach of the agreement on this record and recognize this claim as merely a reformulation of the voluntariness issue presented in the appeal. The defendant had counsel, who explained the provisions of the plea agreement, although neglecting to explain the defendant's statutory ineligibility for early release credits. The agreement clearly defined the crime to which the defendant was pleading guilty. The agreement also set forth the range of punishment to which the defendant was subject. There is no indication that the state failed to abide by the terms of the agreement.

▮ Finally, as to the alleged failure to communicate a previous plea offer, even assuming that there was ineffective assistance of counsel, the defendant's own pleadings demonstrate a lack of prejudice. In his statement of facts, the defendant asserts that he "stated he would refuse any and all offers presented by the State of Arizona because he (the defendant) was not guilty as charged and felt his Attorney of Record would be able to prove his inno-

cence in due process." Given this concession, the trial court properly dismissed this claim without a hearing.

## B. *Counsel's Misadvice Regarding Early Release Credits (1st PCR)*

▮ We separately address this claim recognizing that it, too, is a reformulation of defendant's claim that his plea was involuntary. According to the defendant, the day before his case was to go to trial, trial counsel informed the defendant that, as charged, he faced mandatory 25–year prison terms with no early release credits available, for a maximum of 150 years in prison. The defendant asserts that counsel told him that there were several factors working against acquittal, including the seriousness of the charges, the lack of physical evidence, the jury's likely sympathy with the victim, and recent attention to "these types of cases." The defendant then claims that counsel made the following comments about the plea agreement:

> The Attorney of Record told the defendant that even though the plea agreement said that he could receive a maximum sentence of 15 years, that it was very doubtful that he would be sentenced for the maximum sentence. Even if so sentenced, he indicated that the most he would have to serve would be seven and one-half years, plus he would be eligible to earn early release credits. In other words, the very most the defendant would have to serve would be three to four years, and very unlikely that much time would be involved (and then only if the maximum sentence of 15 years was imposed.)

The defendant claims that he would not have accepted the plea agreement had he known that he would be ineligible for earned release credits "since a 15 year sentence is not much better than life in prison to a man that (sic) is already 50 years old." He also concedes, however, that the threat of possible life imprisonment "had a great influence on the defendant's decision to accept the plea."

Under these circumstances, we find that the defendant failed to establish that he

was prejudiced by the claimed deficiencies of counsel. While the defendant argues that he was unaware of the true contents of the plea agreement, his real claim is that he was unaware of his statutory ineligibility for earned release credits. As we previously discussed, the Arizona supreme court found that the defendant was adequately advised of the consequences of his plea by the trial court. We are bound by our supreme court's decision that the lack of knowledge did not render the plea involuntary. Therefore, the defendant has failed to establish prejudice, which is a critical element to his claim of ineffective assistance of counsel.

### C. Newly–Discovered Evidence (2nd PCR)

■ The final claim we address is defendant's allegation in the second post-conviction petition that he has newly-discovered evidence. His claim is based on evidence that there was another "Jim" living in the trailer park, across from the defendant's trailer. Newly-discovered evidence supports post-conviction relief only if the following conditions are met:

> Newly-discovered material facts exist, which the court, after considering (1) the probability that such facts, if introduced would have changed the verdict, finding or sentence; (2) the diligence which would have been required to discover and produce the evidence at trial; (3) the promptness with which the petitioner has commenced a proceeding after discovery of such facts may require that the conviction or sentence be vacated.

Ariz.R.Crim.P. 32.1(e). To justify relief, the evidence must have existed at the time of trial, but have been discovered after trial; the evidence must not be simply cumulative or impeaching; the evidence must be relevant; and the evidence "must be such that it would likely have altered the verdict, finding or sentence if known at the time of trial." *State v. Cooper*, 166 Ariz. 126, 129, 800 P.2d 992, 995 (App.1990).

We hold that the defendant's claim of newly-discovered evidence relating to Jim McPhie fails. Any relevance to the evidence would simply be impeaching as the defendant fails to specify any direct evidence that McPhie was involved in the crimes with which defendant was charged. We further find that the evidence would not have significantly changed the result in this case—even knowing of the existence of this other individual, the trial court could still have accepted the plea. Furthermore, without evidence in the record, we will not assume that the defendant was unaware of the existence of this individual prior to his plea. Therefore, the trial court was correct in summarily dismissing the claim of newly-discovered evidence.

We distinguish this case from *Duran v. Superior Court*, 162 Ariz. 206, 782 P.2d 324 (App.1989). There, this court allowed the defendant to withdraw from his plea, before sentencing, when the alleged victim recanted. While both cases involve *Alford* pleas, the procedural posture of each is quite different. Here, the claim is made in post-conviction proceedings on a claim of newly-discovered evidence. In *Duran*, the defendant acted promptly, prior to sentencing, on a relevant change in evidence. Under these circumstances, the trial court did not err in rejecting defendant's claim.

Based on the foregoing, we grant review of the first and second petitions for review, but deny relief.

CONTRERAS, J., concurs.

FIDEL, Chief Judge, dissenting:

Although we have faced this case before, the issue has now changed. The defendant entered an *Alford* plea to a crime that rendered him statutorily ineligible to earn early release credits while incarcerated. In *State v. Pac*, 165 Ariz. 294, 798 P.2d 1303 (1990) ("*Pac 1*"), the issue on direct appeal was whether the trial court's failure to inform defendant of this consequence was material to the voluntariness of his plea. Our supreme court held that it was not.

We now learn from the supplemented record in this post-conviction relief proceeding that defendant was not only *uninformed* by the trial court but *misinformed* by counsel. The majority holds

that this too was immaterial to the voluntariness of the plea. I cannot agree.

Analysis begins for me with the fact that this case arises from an *Alford* plea, in which a defendant maintains his innocence, but pleads guilty to get the benefits of a plea bargain and escape the risk of longer sentence that a trial would entail. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). States may constitutionally accept such pleas, but only if they are intelligently made. *Id.* at 37, 91 S.Ct. at 167.

*Alford* pleas have been tolerated but disfavored in Arizona. *Duran v. Superior Court,* 162 Ariz. 206, 207, 782 P.2d 324, 325 (App.1989). Although we do not foreclose defendants from entering pleas based on outright risk-benefit calculations, *id.* at 208, 782 P.2d at 326, such pleas undermine our confidence in the justice of a system of mandatory sentences and enhancements that permits prosecutors to mount the risks of rejecting a plea to levels that even innocent defendants cannot accept. *See* J.D. Howe, *Thoughts on Mandatory Sentencing,* Ariz. B.J., June–July 1985, at 24, 25 ("With the power to use mandatory sentencing statutes, the prosecutor is able to force defendants to waive trial rights and accept sentences dictated by the prosecutor."); *see also State v. Barger,* 167 Ariz. 563, 570, 810 P.2d 191, 198 (App.1990) (mandatory sentencing scheme transfers sentencing power from judge to prosecutor).[2]

As one scholar explains:

Most of our procedural protections come into play only on behalf of a defendant who goes to trial. This fact is troubling in general, but it is especially so when we consider the prospect of a defendant who is in fact innocent but who is afraid to take the risk entailed in choosing to go to trial. When traditional guilty pleas take place, we have no cause to reflect upon this particular fear. But when a defendant pleads guilty and expressly asserts

his innocence, we must confront the morality of the system upon which we rely to settle the vast majority of our criminal cases.

2 David Rossman, *Criminal Law Advocacy* ¶ 9.02[c], at 9–25 (1992).

Because of our systemic discomfort with *Alford* pleas, and in explicit recognition of the risk-benefit calculation that pleading defendants must intelligently make, we have repeatedly held that "[w]here there is ... an objective basis for defendant's re-evaluation [of an *Alford* plea,] withdrawal should be permitted." *Duran,* 162 Ariz. at 208, 782 P.2d at 326 (victim recantation); *accord State v. Fritz,* 157 Ariz. 139, 141, 755 P.2d 444, 446 (App.1988) (victim recantation); *State v. Dockery,* 169 Ariz. 527, 529, 821 P.2d 188, 190 (App.1991) (terminal illness; no benefit in sentence-shortening bargain).

The majority feels bound by *Pac 1* to hold otherwise in this case. I would interpret *Pac 1* more narrowly. It is a small step from *Pac 1* to this decision, but a small step can be one too far. From the unsupplemented record in that case, the supreme court did not know: (1) that the defense attorney who negotiated defendant's plea erroneously assumed that defendant was pleading down to an offense that would permit him to earn early release credits; (2) that the prosecutor who negotiated defendant's plea made the same mistaken assumption; and (3) that this supposed benefit of the plea agreement was one that defendant relied on in deciding to enter the plea. These facts—which defendant's former lawyer affirms by affidavit—make this a different case. The trial court concluded that these facts do not even warrant an evidentiary hearing. It is that holding that the majority affirms. Thus, to state the matter starkly, our court now holds that a defendant's effort to withdraw an *Alford* plea and voluntarily face trial can be summarily rejected without a hearing despite evidence that the defendant entered the plea in reliance upon his lawyer's

---

**2.** As the majority points out, the defendant in this case faced (and will face, if allowed to withdraw his plea), a 150–year prison term by proceeding to trial. The plea bargain, as explained to him by counsel, offered him at worst a 15–year sentence with parole eligibility at 7.5 years and, if denied parole, the chance to earn early release credits against the 15–year term.

overstatement of its benefits. Perhaps such a holding can be found implicit in *Pac 1*, but it is surely not explicit. And I am unwilling to conclude that our supreme court intended by implication, on the abstract record then before it, to permit our system of plea bargaining to degenerate to a level so incompatible with due process.

For these reasons, I respectfully dissent.