860 P.2d 498

**STATE of Arizona, Appellee,**

v.

**Jesse Jason GARCIA, Appellant.**

**No. 1 CA–CR 91–0105.**

Court of Appeals of Arizona,
Division 1, Department D.

April 6, 1993.
Review Denied Nov. 4, 1993.

Grant Woods, Atty. Gen. by Paul J.
McMurdie, Chief Counsel, Crim. Appeals

Section, Colleen L. French, Asst. Atty. Gen., Phoenix, for appellee.

John M. Antieau, Phoenix, for appellant.

## OPINION

GRANT, Presiding Judge.

Appellant, Jesse Jason Garcia ("defendant") was indicted on one count of aggravated assault and two counts of endangerment arising out of a "drive by" shooting in South Phoenix in July 1990. After the trial court directed a judgment of acquittal on the endangerment counts, a jury found defendant guilty of aggravated assault as a dangerous offense, a class 3 felony.

## FACTS

Viewed in the light most favorable to sustaining the verdict, the evidence showed that initially, defendant was a passenger in a car driven by Jimmy, a juvenile who was a member of the South Side Esses gang. As he drove through his neighborhood, Jimmy spotted R.B., a member of a rival gang, the South Side Posse. Jimmy and R.B. argued, then briefly exchanged gunfire. R.B. and a companion ran to R.B.'s nearby home. R.B. warned his mother, younger brothers, and a friend, Mark, to go inside the house because Jimmy might drive by.

Meanwhile, Jimmy turned his car around so that he could travel back toward R.B.'s house. He then changed places with defendant. According to witnesses, defendant slowed the car as it passed R.B.'s house, allowing Jimmy to fire ten or more shots from his .25 caliber semi-automatic pistol. Mark, the only person still outside the house, was wounded in the knee.

Police arrested defendant and Jimmy and recovered Jimmy's weapon at defendant's apartment shortly after the shooting. In an interview with a detective, defendant stated that, after the first exchange of gunfire with R.B., he told Jimmy: "Let me drive because we gotta go back and settle this now."

The trial court sentenced defendant for a class 3 dangerous, non-repetitive felony to a mitigated prison term of five years, with credit for 181 days served. Defendant filed a timely notice of appeal.

## ISSUES

Defendant raises the following issues:

1. The trial court erred in failing to instruct the jury on facilitation as a lesser included offense of aggravated assault;

2. Imposition of a mandatory prison sentence for a dangerous offense was improper because:

   a. A single factor, use of a deadly weapon, was used to define the offense and enhance defendant's sentence, in violation of the prohibition against double punishment; and

   b. The statutory sentencing scheme violates the separation of powers provision of the Arizona constitution.

3. The court erred in ordering restitution to victims of dismissed counts.

## ANALYSIS

### LESSER INCLUDED OFFENSE INSTRUCTION

■ Defendant requested that the jury be instructed on facilitation as a lesser included offense of aggravated assault. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–1004 (1989)[1]. The trial court denied the request in reliance on *State v. Gooch*, 139 Ariz. 365, 678 P.2d 946 (1984). In *Gooch*, the supreme court held that facilitation was not a lesser included offense of second-degree murder, notwithstanding the state's theory that defendant acted as an accomplice by loaning his co-defendant a gun and driving him near the victim's apartment.

---

1. A.R.S. section 13–1004 states:
   A. A person ... commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, such person knowingly provides such other person with means or opportunity for the commission of the offense and which in fact aids such person to commit the offense.

In *State v. Politte*, 136 Ariz. 117, 121, 664 P.2d 661, 665 (App.1982), Division 2 of this court held that the defendant was not entitled to an instruction on another offense such as facilitation even though he might have been charged with and convicted of that offense. The *Politte* court held that facilitation was not a necessary included offense of unlawful sale of a narcotic drug since the sale can be committed without necessarily committing facilitation.

Similarly, in *State v. Harris*, 134 Ariz. 287, 288, 655 P.2d 1339, 1340 (App.1982), the court held in a trial for burglary and theft, that an instruction for a lesser offense is proper if the crime *is* a lesser included offense to the one·charged and the evidence otherwise supports giving the instruction; that is: can the more serious offense be committed without committing the lesser? Determining that burglary and theft could be committed without committing the crime of facilitation, the *Harris* court held that the latter offense was not a lesser included offense of either burglary or theft, and therefore failure to instruct the jury on facilitation was not error. The supreme court noted in *Gooch* that the defendant could have been prosecuted for facilitation under the facts of that case, but reiterated: "Choosing which offense to prosecute rests within the duty and discretion of the prosecutor." 139 Ariz. at 367, 678 P.2d at 948.

▪ The only distinction between facilitation and accomplice liability, as defined by A.R.S. sections 13–301 and 13–303(A)(3) is the requisite mental state. Accomplice liability requires intent or acting intentionally, while facilitation requires only knowledge or acting knowingly, as defined by A.R.S. section 13–105(6).

(a) "Intentionally" or "with the intent to" means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective is to cause that result or to engage in that conduct.

(b) "Knowingly" means, with respect to conduct or to a circumstance described by a statute defining an offense, that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission.

. On appeal, defendant contends that *Gooch* leaves open the possibility that facilitation was a lesser included offense in this case. He relies on the supreme court's statement that:

To determine whether an offense is a lesser-included offense, a court may consider two bases: '(1) the included offense is by its very nature always a constituent part of the major offense charged; or (2) **the terms of the charging document describe the lesser offense even though the lesser offense would not always form a constituent part of the major offense charged.'** *In re Maricopa County Juvenile Action No. J–75755*, 111 Ariz. 103, 105, 523 P.2d 1304, 1306 (1974). Stated differently, can the offense, as described by statute, or as charged, 'be committed without necessarily committing the lesser.'

*Gooch*, 139 Ariz. at 366, 678 P.2d at 947 (emphasis added). Defendant concedes that facilitation is not necessarily a lesser included offense of aggravated assault. However, he argues that because the indictment included a citation to the statutes defining accomplice liability, the document "described" the greater offense of aggravated assault in terms that entitled him to an instruction on facilitation.[2]

The indictment's reference to A.R.S. sections 13–301 through 304 does not alter the result required by *Gooch*. In cases holding that lesser offenses were described by a charging document, courts have focused on language that explicitly alleged the defendant's conduct or mental state. For example, an aggravated assault indictment alleging that defendant intentionally used a deadly weapon set out facts which entitled

---

2. In *Gooch*, the supreme court noted that second-degree murder, "as charged could indeed have been committed without thereby committing facilitation," 139 Ariz. at 366, 678 P.2d at 947, but did not indicate whether the information included citation to the accomplice statutes.

defendant to an instruction on disorderly conduct based on reckless display of such a weapon. *State v. Angle*, 149 Ariz. 499, 508, 720 P.2d 100, 109 (App.1985) (Kleinschmidt, J., dissenting), *opinion vacated in part, dissent adopted in part*, 149 Ariz. 478, 479, 720 P.2d 79, 80 (1986).

In this case, the citation to the statutes in the charging document defining accomplice liability did not set out facts that described aggravated assault in a way that also defined another offense. "In Arizona, being an accomplice is not a separately chargeable offense; it is merely a theory that the state may utilize to establish the commission of a substantive criminal offense." *State v. Woods*, 168 Ariz. 543, 544, 815 P.2d 912, 913 (App.1991). Giving notice of that theory in the indictment, like citing the statutes under which punishment could be imposed, did nothing to alter the substance of the crime charged. Defendant was not entitled to an instruction on facilitation.

## IMPOSITION OF MANDATORY PRISON SENTENCE

Because of the jury's finding of dangerousness, the trial court was required to impose a prison term. A.R.S. § 13–604(G). Defendant raises several arguments regarding his mandatory prison sentence.

### a. *Double punishment.*

■ Defendant contends that his sentence runs afoul of the guarantees against double jeopardy and double punishment, U.S. Const. amend. V, XIV; Ariz. Const. art. II, § 10; A.R.S. § 13–116, because the same factor—his accomplice's use of a deadly weapon—was used (1) to turn a simple assault into an aggravated assault and (2) to support the allegation of dangerousness. He argues that *State v. Orduno*, 159 Ariz. 564, 769 P.2d 1010 (1989), prohibits using an element of the underlying offense to enhance punishment. The supreme court recently resolved this argument against defendant. *State v. Lara*, 171 Ariz. 282, 830 P.2d 803 (1992).

### b. *Separation of powers.*

■ Defendant also contends that Arizona's mandatory sentencing scheme violates the separation of powers provision of the Arizona constitution. That provision, Ariz. Const. art. III, states:

## DISTRIBUTION OF POWERS

The powers of the government of the State of Arizona shall be divided into three separate departments, the Legislative, the Executive, and the Judicial; and, except as provided in this Constitution, such departments shall be separate and distinct, and no one of such departments shall exercise the powers properly belonging to either of the others.

Defendant makes a two-part argument. First, while acknowledging that enhanced sentences under A.R.S. section 13–604 have been held not to violate the separation of powers doctrine, *see State v. Cummings*, 148 Ariz. 588, 591, 716 P.2d 45, 48 (App. 1985); *State v. Olsen*, 157 Ariz. 603, 607, 760 P.2d 603, 607 (App.1988), he contends that this holding must be reevaluated in light of *State v. Prentiss*, 163 Ariz. 81, 786 P.2d 932 (1990).

We disagree. In *Prentiss*, the supreme court invalidated a portion of a sentencing statute applicable to convictions for driving under the influence of alcoholic beverages. The court found that the statutory provision offended article III because it allowed a prosecutor to limit a judge's sentencing discretion by deciding whether to allege certain mitigating factors *after the defendant had been convicted.* As the supreme court stated: "[O]nce the legislature provides the court with the power to use sentencing discretion, the legislature cannot then limit the court's exercise of discretion by empowering the executive branch to review that discretion." *Prentiss*, 163 Ariz. at 85, 786 P.2d at 936. *Accord State v. Dykes*, 163 Ariz. 581, 789 P.2d 1082 (App.1990); *State v. Jones*, 142 Ariz. 302, 689 P.2d 561 (App.1984).

In reaching this conclusion, the supreme court expressly repudiated the holding by Division Two of this court that there was

no distinction between the prosecutor's authority to file the allegation at issue and his authority to file allegations of dangerousness and of prior convictions. *Prentiss,* 163 Ariz. at 83, 786 P.2d at 934. The supreme court, citing *Cummings,* made clear that the latter type of allegations fell within the executive branch's "power to enhance punishment," and thus did not violate article III. *Prentiss,* 163 Ariz. at 85, 786 P.2d at 936.

■ The second part of defendant's separation of powers argument is grounded in an observation by a panel of this court in *State v. Barger,* 167 Ariz. 563, 810 P.2d 191 (App.1990). In upholding defendant's sentence of life imprisonment for aggravated assault committed while on parole, *see* A.R.S. § 13–604.02(A), we took note of the trial judge's frustration with the sentence he was required to impose and stated:

> [W]e are not today called upon to determine whether the judicial branch of state government has been impermissibly limited in fulfilling its role in the criminal justice system, nor do we explore the vertical and horizontal separation of powers questions that might otherwise be raised. *Likewise we do not today examine for constitutional defect the threat of malfeasance of office contained in A.R.S. § 13–604[ (L) ].* Suffice it to say that today we express our concern that a junior officer in the executive branch of county government (deputy county attorney) is given great discretion and power to affect sentencing in a state court while denying to the judicial officer who presides over that court any discretion in what has traditionally and inherently been a function of the court.

167 Ariz. at 570, 810 P.2d at 198 (footnote omitted; emphasis added).

A.R.S. section 13–604(L) provides: "Intentional failure by the court to impose the mandatory sentences or probation conditions provided in this title shall be deemed to be malfeasance." Defendant contends that this statute violates article III because it prohibits a judge from sentencing according to his "conscience" when the prosecutor has proven an allegation that mandates a prison term. Echoing this court's statement in *Barger,* defendant argues: "By [alleging and proving sentence enhancing factors] a neophyte prosecutor can (and routinely does) usurp the judgment and experience of even the most seasoned trial jurists."

There is no merit to this claim. A.R.S. section 13–604(L) does not affect the allocation of power between the prosecutor and the trial judge. Rather, the statute reflects an exercise of legislative control over criminal penalties. *See Prentiss,* 163 Ariz. at 84, 786 P.2d at 935 ("The legislature sets the sentencing limits and distributes the authority to control the sentence, within those limits, in the courts, correctional authority, and the parole board."). By defining a judge's intentional failure to impose a mandatory sentence as "malfeasance," the statute indicates that such an action may lead to that judge's removal from office via the impeachment process. *See* Ariz. Const. art. VIII, part 2, § 2 ("judicial officers ... shall be liable to impeachment for high crimes, misdemeanors, or malfeasance in office"). Moreover, in this case, there is no indication that the trial court's judgment was "usurped." The judge stated: "[A]lthough defendant wasn't the shooter, he did aid this drive by shooting, and I don't think it's unjust for someone who participates in a drive-by to go to prison. I think that's a heinous crime."

Defendant also claims that A.R.S. section 13–604(L) offends the federal constitution. According to this argument, the threat of malfeasance would compel trial and appellate courts to ignore whether the mandatory sentence constituted cruel and unusual punishment, thus violating the eighth amendment and the supremacy clause as well. *See* U.S. Const. art. VI, amend. VIII. He claims that Arizona's guarantee against cruel and unusual punishment is likewise offended. *See* Ariz. Const. art. II, § 15.

We doubt that the statute must be construed so rigidly as to preclude a challenge to a sentence that is unconstitutionally disproportionate to the conduct charged. *See State v. Bartlett,* 164 Ariz. 229, 241, 792 P.2d 692, 704 (1990), *vacated sub nom.*

*Arizona v. Bartlett,* —— U.S. ——, 111 S.Ct. 2880, 115 L.Ed.2d 1046 (1991), *affirmed on remand,* 171 Ariz. 302, 830 P.2d 823 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 511, 121 L.Ed.2d 445 (1992) (sentence disproportionate under the eighth amendment; authority to revise excessive sentence found in A.R.S. section 13–4037(B)).

■ However, we need not resolve the issue in this case because defendant's sentence presents no issue of cruel and unusual punishment. The fact that conviction of a dangerous offense made a prison sentence mandatory does not by itself violate the eighth amendment, *see Harmelin v. Michigan,* —— U.S. ——, ——, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991), and the five-year term actually imposed is insufficient to raise any implication of disproportionality under the federal or state constitution. *Id.,* —— U.S. at ——, 111 S.Ct. at 2707 (Kennedy, J., concurring) (threshold inquiry is whether a "comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality"); *State v. Mulalley,* 127 Ariz. 92, 95, 618 P.2d 586, 589 (1980) (to find statutorily mandated sentence cruel and unusual, court must determine if it offends "perceptions of decency ... of contemporary society"), *overruled on other grounds, State v. Noble,* 152 Ariz. 284, 731 P.2d 1228 (1987).

### RESTITUTION

■ The trial court ordered restitution in a total amount of $729.75. Defendant contends that the trial court erred in ordering restitution to B.B. of $100.00 and S.R. of $221.75, the alleged victims of the endangerment counts dismissed at trial. The state concedes error and we agree. A court may impose restitution only on charges for which a defendant has been found guilty, to which he has admitted, or for which he has agreed to pay. *State v. Pleasant,* 145 Ariz. 307, 308, 701 P.2d 15, 16 (App.1985).

Pursuant to A.R.S. section 13–4037(A), we vacate the court's order directing restitution to B.B. and S.R. The restitution is accordingly reduced to $408.00. Pursuant to A.R.S. section 13–4035, we have reviewed the entire record. We find no fundamental error. Defendant's conviction and sentence are affirmed.

CONTRERAS and CLABORNE, JJ., concur.