NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

PERRY JEROME BRYARS, *Appellant*.

No. 1 CA-CR 22-0504
FILED 11-30-2023

Appeal from the Superior Court in Maricopa County
No. CR2019-101287-001
The Honorable Rosa Mroz, Judge (Deceased)
The Honorable Jacki Ireland, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Diane L. Hunt
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Andrew M. Jacobs and Chief Judge David B. Gass joined.

---

**B R O W N**, Judge:

¶1        Perry Jerome Bryars appeals the superior court's denial of his motion for a new trial on six counts of felony endangerment. Because a different panel of this court previously concluded that sufficient evidence supports the endangerment convictions, and in any case, the jury's verdicts were not contrary to the weight of the evidence, we affirm.

### BACKGROUND

¶2        A jury found Bryars guilty of six counts of felony endangerment along with counts of aggravated assault, attempted sexual assault, kidnapping, and attempted arson of an occupied structure, based on evidence he assaulted his estranged wife, M.Y., and then tried to blow up the house she was living in. In a prior appeal arising from the same verdicts, Bryars challenged the sufficiency of evidence to support the endangerment convictions, the designation of the attempted sexual assault conviction as a domestic violence offense, and the superior court's consideration of aggravating factors in sentencing. This court affirmed, rejecting Bryars' primary argument that the superior court erred in denying his motion for judgment of acquittal. *State v. Bryars*, 1 CA-CR 22-0135, 2023 WL 3477793, at *3, ¶ 14, *4, ¶ 21 (Ariz. App. May 16, 2023) (mem. decision). Because Bryars' present appeal involves only the endangerment counts, we limit our factual discussion to the trial evidence on those charges.[1]

¶3        After Bryars repeatedly assaulted M.Y. and prevented her from leaving the house, she managed to escape. When M.Y. returned to the house about 30 minutes later, Bryars poked his head out of a garage window, asked if she "smell[ed] the gas," and said, "the house is going to blow in five minutes." M.Y. persuaded Bryars to come outside, and she

---

[1]        We view the evidence in the light most favorable to sustaining the convictions, resolving all reasonable inferences against Bryars. *See State v. Harm*, 236 Ariz. 402, 405, ¶ 3 n. 2 (App. 2015).

called 911.  When police officers arrived, they placed Bryars in handcuffs after "a little standoff."

¶4        After Bryars was taken into custody, a captain from the fire department arrived and found the police officers "gathered around by the garage," "in close proximity . . . of the house."  The captain, who is also a hazmat specialist, shut off the main gas line to the property and then advised the officers to "clear the scene" and evacuate neighboring homes.  A few minutes later, the rest of the fire department's hazmat team arrived on the scene.

¶5        The hazmat team detected "small hits of gas" as they metered the exterior of the "closed up" house.[2]  The team proceeded carefully, taking about 45 minutes to allow time for the gas to dissipate.  Once the captain determined it was "appropriate" to enter the house, he "cracked the front door," saw "a lit candle on the floor," and extinguished it.  The team entered the house, opening windows and doors as they metered, which enabled the gas to keep dissipating.  The team discovered that gas lines to the oven and water heater were unconnected to those appliances and turned to the on position.  Although the oven was electric, there was a gas hookup behind it.

¶6        The hazmat team determined there was a "1 to 2 percent gas" concentration inside the house.  At trial, the fire captain testified that the flammable range for natural gas is five to fifteen percent.  At that concentration, gas is "highly explosive," with the power of the explosion dependent on the volume of gas when ignited.  The captain explained that an ignition source close to the ground—like the candle on the floor in the house—could cause a "catastrophic" explosion that would "blow[] up the entire home" and harm people outside it based on the volume of gas present by the time of ignition.  The captain surmised that such an explosion would have occurred at the house absent the mitigation measures taken by the fire department—unless the candle went out on its own before the gas concentrated to a flammable level.[3]  A juror asked the captain how long it would take, "on average" for a house of this size, "for the gas to build up to cause an explosion by that candle on the floor."  The captain said he could

_____

[2]        Gas will leak from a home through its eaves and other openings even when all the doors and windows are shut.

[3]        The doorbell wires had been disconnected, and the fire captain posited this could have been done to prevent an earlier ignition—higher up in the space—that would cause less impact.

not answer the question because of the number of variables involved —including the "cubic feet of space," the amount of furniture taking up space, the size of the attic, and "the volume of flow of gas" entering the house.

¶7        When Bryars was interviewed after his arrest, he admitted he had experience with explosives.  He also admitted cutting the doorbell wires and lighting a candle.  The jury found him guilty of the endangerment counts as to M.Y. and the five police officers at the scene.

¶8        Bryars moved for a new trial under Arizona Rule of Criminal Procedure ("Rule") 24.1(c), asserting the verdict was "contrary to law or the weight of the evidence."  Although the motion did not expressly refer to the endangerment verdicts, Bryars argued the fire captain "was not clear as to how this alleged arson was an actual threat."  The superior court denied the motion, finding "there was substantial evidence to support the guilty verdicts."  The court sentenced Bryars to a presumptive one-year prison term on each endangerment count, to run concurrently with one another and with his sentences on all other convictions except for the attempted arson, which was ordered to run consecutively.

¶9        Bryars noticed an appeal from the judgment of guilt and sentence on all convictions, but the notice did not expressly include the denial of his motion for new trial.  *See* A.R.S. § 13-4033(A) (enumerating bases for appeal); *State v. Wilson*, 253 Ariz. 191, 194, ¶ 9 n.3 (App. 2022) (finding jurisdiction lacking to consider defendant's challenge to a denial of a motion for new trial where the notice of appeal did not identify that ruling).  The superior court permitted Bryars to file a delayed notice of appeal from the order denying his motion for new trial in accordance with Rule 32.1(f), and we have jurisdiction over that appeal under A.R.S. § 12-120.21(A)(1).

**DISCUSSION**

¶10        We review the superior court's denial of a motion for new trial based on the weight of the evidence for an abuse of discretion.  *Harm*, 236 Ariz. at 406, ¶ 11.

> [I]n deciding a motion for new trial, a trial court may weigh the evidence and make its own determination of the credibility of the witnesses.  If, after full consideration of the case, the court is satisfied that the verdict was contrary to the weight of the evidence, it may set the verdict aside, even if substantial evidence supports it.

*State v. Fischer*, 242 Ariz. 44, 49–50, ¶ 17 (2017). We do not reweigh the evidence and will uphold the superior court's ruling if, "resolving every conflict in the evidence in support of the order, substantial evidence supports the trial judge's order." *Id.* at 52, ¶ 28.

¶11 A defendant commits felony endangerment "by recklessly endangering another person with a substantial risk of imminent death." A.R.S. § 13-1201. The superior court correctly instructed jurors they could find Bryars guilty only if he "did in fact create a substantial risk of imminent death." *See* Rev. Ariz. Jury Instr. Stand. Crim. 12.01 (endangerment) (4th ed. 2016). "Imminent," which is not defined by statute, means "[a]bout to occur" or "impending." American Heritage Dictionary of the English Language (5th ed. 2011); *see also* A.R.S. § 1-213 (requiring that words in a statute "be construed according to the common and approved use of the language" unless the word is "technical" or has "acquired a peculiar and appropriate meaning in the law"); *State v. Clow*, 242 Ariz. 68, 71, ¶ 13 (App. 2017) (referring to an established dictionary to determine the ordinary meaning of a word not statutorily defined).

¶12 Bryars argued in his prior appeal that absent evidence the gas reached a combustible concentration when the endangerment victims were present, the trial evidence did not establish that he placed them in actual, substantial risk of imminent death. This court determined there was sufficient evidence to support the verdicts. *Bryars*, 1 CA-CR 22-0135, at *3, ¶ 14.

¶13 Bryars' present argument is essentially the same as the one raised in his prior appeal. He contends the superior court should have found the endangerment verdicts were contrary to the weight of the evidence. Despite the technical distinction between the standards of review for each claim, we are hard pressed to discern a substantive difference among the issues on appeal. Much like our review of a denial of a motion for new trial, we review a sufficiency-of-evidence claim by evaluating whether substantial evidence supports the challenged decision while refraining from reweighing the evidence and resolving all evidentiary conflicts in favor of upholding the verdict. *See State v. Pena*, 235 Ariz. 277, 279, ¶ 5 (2014); *State v. Barger*, 167 Ariz. 563, 568 (App. 1990).

¶14 We recognize the similarity between the standards of review does not apply when we review a *grant* of a new trial under Rule 24.1(c). As explained by our supreme court, the trial judge has "broad discretion" in that circumstance, based on the judge's personal observation and evaluation of the trial proceedings, "to find the verdict inconsistent with the

evidence" even if that evidence is sufficient to support the verdict. *Fischer*, 242 Ariz. at 50, ¶ 21. But Bryars cites no decision in which an appellate court has held that even though substantial evidence supported the verdict, the superior court abused its discretion by *denying* a motion for a new trial under Rule 24.1(c). Instead, he implicitly acknowledges the equivalence of his prior and present claims by rearguing, in this appeal, that the endangerment verdicts were unsupported by the evidence. Thus, to the extent any meaningful differences exist in the standards of review between evaluating sufficiency of the evidence and *denial* of a motion for a new trial, those differences are not material to our analysis here.

**¶15** Given the substantive similarity between Bryars' current and prior claims, we apply the "law of the case" to this appeal. The "law of the case" doctrine is a rule of general application and establishes:

> that the decision of an appellate court in a case is the law of that case on the points presented throughout all the subsequent proceedings in the case in both the trial and the appellate courts, and no question necessarily involved and decided on that appeal will be considered on a second appeal or writ of error in the same case, provided the facts and issues are substantially the same as those on which the first decision rested, and, according to some authorities, provided the decision is on the merits.

*State v. King*, 180 Ariz. 268, 278 (1994) (citation omitted).

**¶16** We acknowledge the State has not argued law of the case; instead, the State summarily concludes that this court's decision in the prior appeal—finding that the endangerment convictions are supported by substantial evidence—requires affirming in this appeal. Nonetheless, "[w]e are obliged to affirm the trial court's ruling if the result was legally correct for any reason." *State v. Perez*, 141 Ariz. 459, 464 (1984). And though we have discretion not to apply the doctrine to a decision that is not yet final, *see King*, 240 Ariz. at 279, we see no basis to depart from it here, *see Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 279 (App. 1993) (enumerating reasons not to apply the doctrine, including manifest injustice or error; a "substantial change . . . in essential facts or issues, in evidence, or in the applicable law"; or if the prior decision did not decide the issue in question, did not address the merits, or is ambiguous). Because this court previously concluded there was sufficient evidence for the jury to find Bryars placed M.Y. and the officers in actual, substantial risk of being imminently killed, we will not revisit that determination. *See*

*Bryars*, 1 CA-CR 22-0135, at *2, ¶ 10 (explaining that evaluating the sufficiency of evidence underlying a conviction turns on whether substantial evidence supports the jury's verdict).

**¶17**      Even assuming there are sufficient distinctions between Bryars' arguments in the first appeal and this one to merit an independent review, we conclude there was substantial evidence to support the superior court's denial of his motion for new trial.  Bryars, who admittedly had experience with explosives, opened the gas lines and placed a lit candle in the house at some point during the 30 minutes she was away.  The fire department shut off the main gas line to the house after she arrived back home.  And the gas then dissipated for 45 minutes before it was measured at one to two percent concentration inside the house.  The lack of evidence showing the precise concentration of gas before the main line was shut off did not preclude a reasonable inference that the concentration was high enough to present an actual, substantial risk of imminent death.  Thus, the superior court did not abuse its discretion in concluding the endangerment verdicts were not contrary to the weight of the evidence.

## CONCLUSION

**¶18**      For these reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:      AA

7