866 P.2d 143

STATE of Arizona, Appellee,

v.

Alfred Eli HOPKINS, Appellant.

No. 1 CA–CR 91–1576.

Court of Appeals of Arizona,
Division 1, Department E.

Sept. 9, 1993.

Review Denied Feb. 1, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Crim. Div., and Daniel J. Kiley, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Stephanie Swanson, Deputy Public Defender, Phoenix, for appellant.

## OPINION

GERBER, Judge.

Defendant Alfred Eli Hopkins (Hopkins) appeals from his convictions of sexual abuse of a minor and child molestation. He presents two issues for review: whether the trial court erred by admitting evidence of prior bad acts and whether trial counsel's representation was ineffective. Because the prior acts were improperly admitted, we reverse and remand for a new trial and, for this reason, do not reach the second issue.

## BACKGROUND

Hopkins was charged by indictment with two counts of sexual abuse of a minor, class 3 felonies, and one count of child molestation, a class 2 felony. All of the offenses charged were dangerous crimes against children. A jury convicted him of all counts.

The charges against Hopkins arose from allegations that he sexually molested his niece, D.C., when she was eleven years old. Prior to trial, the state filed a motion to admit evidence of his alleged prior molestation of other young family members pursuant to Rule 404(b) of the Arizona Rules of Evidence.[1] Hopkins filed no written response.

At the pretrial hearing on the motion, the state argued that evidence of Hopkins's molestation of his two stepdaughters, J.P. and K.P., and his nephew, K.T., was admissible to establish his emotional propensity to molest children and to establish that his fondling of D.C. was intentional rather than accidental.[2] These alleged molestations ended approximately ten years prior to the present charges.

Prior to trial, the state offered an avowal concerning what its expert, a psychologist named Dr. Hinton, would testify to if he were called as an expert medical witness on the emotional propensity issue. Dr. Hinton did not appear at the hearing or the trial. After describing Dr. Hinton's credentials and experience, the state avowed that he would testify that Hopkins's previous acts of molestation demonstrated a continuing emotional propensity to molest children; that the fact that approximately ten years had passed without incident between the previous acts and the present offense was due solely to the unavailability of young children in the home; and that the acts were similar in nature despite differences in age and gender of the victims and in the types of acts involved.

Characterizing the avowal as uncontested, the trial court granted the motion to admit evidence of the prior bad acts. It found that the state had established by expert testimony that the prior acts showed a continuing emotional propensity to molest children and that the acts were not too dissimilar or remote in time. The trial court did not comment on the admission of the acts for the other purpose of showing intent, knowledge, and absence of mistake. The prior acts were described in detail at Hopkins's trial.

## DISCUSSION

*Objection by Defense Counsel*

The state argues in its brief on appeal that defense counsel failed to contest the avowal concerning the expert's testimony and that therefore Hopkins may not contest the avowal for the first time on appeal.

■ We disagree with the state and the trial judge that the avowal was uncontested. It is true that counsel did not object to the fact that the expert was not present to testify. However, the record reveals several extended instances where defense counsel objected both to the admission and to the substance of the state's avowal about the absent medical expert's expected testimony:

---

1. Rule 404(b), in effect at the time of Hopkins's trial, provided:

    (b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

2. The state acknowledged that one of the stepdaughters, K.P., denied being molested by Hopkins. Despite the state's subpoena, she did not appear at trial.

DEFENSE COUNSEL: *Your honor, essentially our response is that these prior bad acts, none of them should be admitted.*

*... we have a problem with the evidence of the bad acts themselves, the sufficiency.*

*...* we have a changed story as far as [stepdaughter J.P.] is concerned. [J.P.], although initially apparently told Detective Schaub that there had been some relations, sexual relations between her and her father, that statement is now being recanted by that witness and was recanted under oath.

.    .    .    .    .

THE COURT: ... So if [stepdaughter K.P.] is called to testify and she takes the stand, what is she going to say? Is she going to say that these prior acts occurred or they did not? Or don't you know?

DEFENSE COUNSEL: At this point, your honor, the indications are that she will say that nothing ever happened. *And for that reason, I don't think the state would have sufficient evidence to proceed and try to establish with any degree of certainty that this—these acts supposedly happened.*

.    .    .    .    .

*We feel remoteness in time is a major factor in this case.*

The other factor that we would note to the court that would tend to eliminate the significance or relevance of any such acts [regarding nephew K.T.] is *the sex of the victim and the nature of the acts, which are totally different from the sex of the victim that's alleged in these other incidents.*

.    .    .    .    .

*... There is no evidence for two of the allegations. The third allegation is so remote and so distinguishable from the present facts of the case that it would be highly prejudicial. And the relevance is very questionable on whether Mr. Hopkins did or didn't commit the acts he's accused of.*

.    .    .    .    .

Your honor, essentially touching on the point that the court was concerned about

with regard to [K.T.], your honor, we feel that it's a combination that the court has to consider, not only the *differences in sex, differences in acts, but also taking into consideration the remoteness in time that those factors make the admission or the presentation of any such evidence to the jury extremely prejudicial, and the relevance of it, even given an opinion by a doctor, is extremely unreliable.* (Emphasis added.)

By arguing that the acts were prejudicial, dissimilar, and remote in time, counsel made a relevancy and foundational objection. He also explicitly questioned the reliability of the evidence of the prior acts. His objection regarding the prior bad acts is sufficiently detailed to be preserved for review. *See Killingsworth v. Nottingham,* 18 Ariz.App. 356, 358, 501 P.2d 1197, 1199 (1972). Even in the absence of an objection, we find fundamental error in the admission of these prior acts based solely on an avowal that is so inadequate on its face. *See State v. Gendron,* 168 Ariz. 153, 155, 812 P.2d 626, 628 (1991).

*Insufficiency of Avowal*

In *State v. McFarlin,* 110 Ariz. 225, 517 P.2d 87 (1973), our supreme court established the emotional propensity exception to the exclusionary rule. The court there held that in those cases in which the offense charged involves abnormal sex acts, there may be reason to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit the charged crime. *Id.* at 228, 517 P.2d at 90. The reason for requiring the prior uncharged sex acts to have been committed near in time to the offense charged is to ensure that the emotional propensity existed when the charged crime was committed. *State v. Spence,* 146 Ariz. 142, 144, 704 P.2d 272, 274 (App.1985).

▬ Admission of prior bad acts to show a continuing emotional propensity to commit the crime charged is an exception to the general prohibition on admission of such acts in Rule 404(b). This exception does not exist in the federal rule from which Arizona's rule derives. Arizona's exception to the rule's

exclusionary policy rests on expert medical testimony showing a reliable medical basis for the continuing emotional propensity.

■ In *State v. Treadaway*, 116 Ariz. 163, 167, 568 P.2d 1061, 1065 (1977), the supreme court held that where the prior acts are remote in time or dissimilar in nature to the crime charged, the prior acts are inadmissible unless there is "reliable expert medical testimony" that such acts show a continuing emotional propensity to commit the crime charged. The rationale underlying *Treadaway* is that admission of such evidence ought to be strictly limited because of the danger of unfair prejudice to the defendant. If this kind of supercharged evidence of remote prior misconduct is to be admitted, foundational medical expert testimony must precede it. *Id.* The court reiterated the requirement of reliable expert medical testimony for prior remote or dissimilar acts in *State ex rel. LaSota v. Corcoran*, 119 Ariz. 573, 576–77, 583 P.2d 229, 232–33 (1978). The present state of the law, as it appears in both these cases, is that admitting emotional propensity to molest based on acts as remote in time as ten years requires medical testimony which is factually and medically "reliable" about the continuing emotional propensity during the interval between the prior acts and the present charges.

Here, the state fell well short of meeting this reliability requirement. No medical expert testified at the pre-trial hearing or the trial. The state offered no affidavits or written reports in lieu of such testimony. Neither the trial judge nor defense counsel could question the expert, and the trial judge could not possibly evaluate his reliability. The most the trial judge could do was to listen to the prosecutor's piecemeal rendition of the expert's anticipated testimony. The prosecutor presented an inconsistent and uncertain account of what the expert would testify about:

> There was not the availability of a young child in the home for him to abuse *maybe* is what he would say.

．　　．　　．　　．　　．

But the obvious implication from the evidence is that *perhaps* other acts *might* have occurred. (Emphasis added.)

The state made no precise avowal that the absent expert would testify to emotional propensity. The state tried to account for the ten-year gap between the prior bad acts and the offense charged by arguing that, because there was no child living in Hopkins's home during this period of time, Hopkins "maybe" lacked a potential victim. Equally credible explanations for the time gap are that Hopkins simply changed his behavior or lacked any emotional propensity to molest or did not commit the prior acts at all. There is nothing in the record to show that these innocent interpretations are any less reliable than the uninformed criminal interpretation urged by the prosecution.

As of 1977, the emotional propensity exception had been extended to questionable lengths. *Treadaway*, 116 Ariz. at 167, 568 P.2d at 1065. In this case it has gone far beyond those lengths. Evidence of prior sexually aberrant acts is of such a highly prejudicial nature that it makes the guilty verdict "almost a formality." *Id.* Jurors hearing evidence of prior sexual misconduct may assume too readily that the past misconduct is conclusive proof of the present charge. To admit evidence of these ten-year-old prior bad acts without expert testimony of their relevancy, where the prosecution's rendition of the anticipated testimony is riddled with uncertainty and speculation, falls short of the reliability requirements of *Treadaway* and takes the emotional propensity exception to unacceptable lengths. We hold, therefore, that because there was no reliable expert medical testimony to show emotional propensity, the trial court abused its discretion by admitting this evidence.

■ In an apparent backup argument, the state also argues that evidence of these prior acts is admissible to show intent and absence of mistake under Rule 404(b). For the same reasons that this evidence is inadmissible under the emotional propensity exception—its highly inflammatory nature coupled with little or no predictive value—it is inadmissible under these exceptions to Rule 404(b). A further problem exists: before

admitting evidence of prior crimes, the trial court must weigh on the record the probative value of the evidence against any possible prejudice to the defendant. *State v. Taylor*, 9 Ariz.App. 290, 293, 451 P.2d 648, 651 (1969). The record reveals no such balancing by the trial court—not surprisingly, because the rationale for admission was emotional propensity rather than absence of mistake.

■ J.P.'s son, who was present in the room at the time of the alleged crime, denied that the charged incident occurred at all. Without the bombshell evidence of the prior bad acts, there is a reasonable prospect of a different verdict and, hence, reversal is required. *State v. Grijalva*, 137 Ariz. 10, 14, 667 P.2d 1336, 1340 (App.1983).

In light of our reversal, we need not reach the remaining issue raised by Hopkins.

### CONCLUSION

For the foregoing reasons, the trial court erred by admitting evidence of Hopkins's alleged prior bad acts. We reverse the convictions and remand for a new trial.

VOSS, P.J., and LANKFORD, J., concur.