880 P.2d 731

**STATE of Arizona, Appellee,**

v.

**Ronald Eugene POUNDSTONE, Appellant.**

No. 1 CA–CR 93–0237.

Court of Appeals of Arizona, Division 1, Department A.

May 10, 1994.

Review Denied Sept. 29, 1994.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Terry J. Adams, Deputy Public Defender, Phoenix, for appellant.

OPINION

EHRLICH, Judge.

Ronald Eugene Poundstone ("defendant") appeals from his convictions for one count of theft and two counts of fraudulent schemes and artifices, each with two prior felony convictions, and the sentences imposed. He asserts that the fraud convictions were based on insufficient evidence and that all three

convictions were tainted by the introduction of improper character evidence. For the reasons which follow, we affirm his convictions and modify his sentences.

## FACTS[1] AND PROCEDURAL HISTORY

The defendant submitted his resume to an employment agency for placement as a business manager/controller, certifying that the information on his resume was "true and correct." The agency in turn referred the defendant to Habitat, Incorporated, an architectural design company, which was seeking an experienced controller. On January 31, 1990, Paul Brunoforte, Habitat's vice president and general manager, hired the defendant for the position based on the strength of the defendant's work history as portrayed in his resume and interviews.. The defendant had represented to Brunoforte and the employment agency that he had held two accounting-related positions between 1983 and 1987. However, during that time, the defendant was imprisoned.

Brunoforte was dissatisfied with the defendant's job performance and, in July 1990, the defendant resigned at Brunoforte's urging. In December 1990, Brunoforte discovered that Habitat's general account was missing approximately $234,000. From March through June 1990, checks from the general account had been made payable in that aggregate amount to "H & P Contracting" and "Reliable," companies which never rendered services to Habitat. In fact, the defendant had opened two bank accounts in those names; he was the authorized signatory on the accounts and also the person who had written the Habitat checks that were deposited in the accounts. The defendant then proceeded to spend the money in those accounts for his personal benefit.

Subsequently, the defendant was indicted for one count of theft, a class 3 felony, and two counts of fraudulent schemes and artifices, each a class 2 felony. The state alleged that the first of the two fraud counts was supported by the defendant's diversion of Habitat's funds for his benefit; the second

was predicated on the defendant's misrepresentation of his work history, which led to his employment by Habitat. The state also alleged that the defendant had nine prior felony convictions.

At the close of the state's evidence at trial, the defendant moved for acquittal on all counts, claiming that the state had not met its burden of proving his guilt. The motion was denied. The defendant then rested without presenting any evidence. The jury found the defendant guilty as charged, whereupon the defendant admitted two prior felony convictions.

The court sentenced the defendant to a presumptive 11.25–year term on the theft conviction and to 15.75–year presumptive terms on each of the fraud convictions, with credit for 320 days served, each sentence concurrent with the others. The court further ordered the defendant to pay $313,000 in restitution and three $100 felony assessments. He timely appealed.

### DISCUSSION

#### A. Sufficiency of the Evidence

■ The defendant first asserts that the evidence was insufficient to sustain his convictions for fraudulent schemes and artifices. We disagree. A person is guilty of this crime if, "pursuant to a scheme or artifice to defraud, [he] knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions...." Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–2310(A). "The scheme need not be fraudulent on its face but 'must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" State v. Haas, 138 Ariz. 413, 418, 675 P.2d 673, 678 (1983) (quoting United States v. Pearlstein, 576 F.2d 531, 535 (3d Cir.1978)) (other citations omitted). The term "fraudulent representations" has been explained as "deceitful statements or half-truths or even the concealment of material

---

1. The facts are viewed in the light most favorable to sustaining the verdict. E.g., State v. Atwood, 171 Ariz. 576, 596, 832 P.2d 593, 613 (1992), cert. denied, — U.S. —, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993).

facts." *Id.* (citations omitted). We will set aside a jury verdict only if it clearly appears that "upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987).

Regarding the first count of fraudulent schemes and artifices, the indictment alleged that, while employed as Habitat's controller, the defendant knowingly obtained a benefit of $234,646.07 "by means of false or fraudulent pretenses, representations, promises or material omissions, the benefit obtained by means of the material omission to Habitat, Inc. by [the defendant] that he was diverting Habitat, Inc. money through the unauthorized issuance of checks to H & P Contracting and Reliable." The defendant maintains that his failure to advise Habitat of his unauthorized diversion and use of its funds, which he claims was the state's factual theory at trial, is insufficient to constitute a material omission as the term appears in section 13–2310.

An indictment is deemed conformed to the evidence. Ariz.R.Crim.P. 13.5(b). In this case, the facts adduced at trial established that, prior to issuing Habitat checks without authorization, the defendant opened two checking accounts in the names of "H & P Contracting, Supplies & Equipment (Ronald E. Poundstone)" and "Reliable c/o Ronald E. Poundstone." Subsequently he transferred Habitat funds to these accounts for his own use. To conceal this diversion, the defendant failed to reconcile the company's bank statements, which was his responsibility as controller, and tampered with the check register. Even when later instructed to delegate the bank statement reconciliation responsibilities, the defendant released only the January and February 1990 statements; he had not begun to write unauthorized checks until March 1990. Additionally, the defen-

dant convinced Habitat's bookkeeper that he had investigated the inconsistencies in the check register which she had reported to him. This provided sufficient evidence from which the jury, properly instructed on the elements of fraudulent schemes and artifices, could have concluded that the defendant, according to a scheme and through misrepresentations, intended to mislead Habitat employees to knowingly obtain a financial benefit for himself.

The defendant next maintains that his conviction for a second count of fraudulent schemes cannot stand because it too was without adequate evidentiary support. Specifically he asserts that there was no evidence presented that the falsification of his resume was to defraud Habitat and that the intent of section 13–2310 is not to make illegal omissions and false representations on resumes.

Habitat sought an experienced controller; its vice president testified that the defendant's purported work history suggested to him that the defendant had the requisite experience and he relied on the defendant's resume in making his employment decision. Brunoforte also testified that he would not have hired the defendant had he known of his years in prison. The defendant did not merely ignore a period of time in his life or embellish his professional experience; he not only failed to disclose that he was in prison between 1983 and 1987, he misrepresented those years as ones of comparable employment for the purpose of providing himself with a paid position and access to Habitat's funds.[2] Failing to mention his prison sentence while inventing an employment history constituted material omissions and misrepresentations "calculated to deceive" a prospective employer. *Haas,* 138 Ariz. at 418, 675 P.2d at 678; *see State v. Ritacca,* 169 Ariz. 401, 402, 819 P.2d 987, 988 (App.1991).

2. On the resume given to Brunoforte, the defendant wrote:

Work History:
1972–1984 Pacific Powder Pipe and Supply. Tacoma, Washington. Responsibilities included purchasing, all accounting functions, forecasting, budget preparations. Continually involved in analysis of new products and departments. Interfaced with marketing. DP section IBM 360. Staff of fifty. [The defendant

subsequently told the employment agency that the company went out of business.]
1984–1988 Cowboy Enterprises. Nevada and Arizona. Assistant to the Controller. Responsibilities included all accounting functions. Accounts payable, Accounts Receivables, Payrolls, Billing, establishing vendor criteria. Inventory City, State, Federal taxes. Special studies and statistic analysis. Owner retired.

The jury reasonably decided that the defendant purposely sought the position of controller for the distinct purpose of obtaining funds. At trial, Richard Haas testified that he had employed the defendant as the controller of his company. In 1989, he discovered that the defendant had forged company checks and deposited them in bank accounts opened under fictitious names, "H & P Contracting" and "Sun State Control." The defendant ultimately confessed that he had forged the checks and then used the money for his own use.[3] Once placed as Habitat's controller, the defendant similarly began stealing his new employer's money.

There was sufficient evidence to support the jury's guilty verdict on the second count of fraudulent schemes and artifices. Thus the trial court correctly denied the defendant's motion for judgment of acquittal. *See, e.g., State v. Mathers,* 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990).

### B. Prior Imprisonment

At trial, a custodian of records for the Arizona Department of Corrections ("DOC") testified that, between August 5, 1983, and October 16, 1987, the defendant was in the custody of DOC. The defendant argues that evidence of his prior convictions which led to his imprisonment was admitted improperly and that the state need only have proved that he did not work for those companies listed on his resume. With this premise, he also asserts that the trial court failed to weigh the probative value of this evidence against its prejudicial effect.

The trial court recognized from the outset that the fact of the defendant's imprisonment was pertinent to the second count of fraudulent schemes. In this context, it considered at some length the probative value of the evidence of the defendant's prior felony convictions against their prejudicial potential, ruling that the convictions would not be admitted unless the defendant testified and then only for impeachment purposes and to a limited degree. *E.g., State v. Hopkins,* 177 Ariz. 161, 164–65, 866 P.2d 143, 146–47 (App. 1993). Thus, when the defendant did not testify, evidence of his prior convictions was not offered. In this regard, the custodian of records did not state that the defendant had been convicted of a felony nor did she testify as to the nature of the crimes for which he was imprisoned. Only the length of the defendant's imprisonment was addressed, and it was relevant as to whether the defendant, in misrepresenting his work history, had made a false representation or material omission which was the factual basis for the second count of fraudulent schemes. *See* Ariz. R.Evid. 401; *Ritacca,* 169 Ariz. at 402–03, 819 P.2d at 988–89 (prior conviction admissible to establish a material omission as an element of a fraudulent scheme). The defendant eventually acquiesced in the state's approach to limit questioning of the prison custodian of records to only the dates in which the defendant was imprisoned.

### C. Felony Assessment

 Finally, although not raised by the parties, we conclude that the trial court improperly imposed a $100 felony assessment for each of the defendant's convictions. At sentencing, the court found that the convictions arose out of the same factual situation and appropriately ordered that the sentences be served concurrently. A.R.S. § 13–116. A felony assessment likewise constitutes a sentence subject to the statute which prohibits multiple punishment for the same act or omission, A.R.S. section 13–116. *State v. Sheaves,* 155 Ariz. 538, 541–42, 747 P.2d 1237, 1240–41 (App.1987). Therefore only one felony assessment should have been imposed. Pursuant to section 13–4037, the defendant's sentence is modified to reflect the imposition of only one felony assessment.

We have searched the record on appeal for fundamental error pursuant to section 13–4035 and have found none. The defendant's convictions are affirmed and his sentences are affirmed as modified.

GRANT, P.J., and VOSS, J., concur.

---

**3.** From fear of a lawsuit for defamation of character, Haas gave a favorable portrait of the defendant to the employment agency and Habitat.